**Dariel BANKS, Plaintiff,**

v.

**HIT OR MISS, INC., a Delaware corporation, Defendant.**

**No. 95 C 7610.**

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 24, 1998.

Arthur R. Ehrlich, Goldman & Ehrlich, Chicago, IL, for plaintiff.

Michael A. Weinberg, Novack & Macey, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Dariel Banks, sued her former employer, Hit or Miss, Inc. ("Hit or Miss"), alleging dismissal in violation of the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12101 *et seq.* Hit or Miss moves for summary judgment. For the following reasons, the motion is granted.

## Background

Hit or Miss is a retail clothing store. Hit or Miss hired Ms. Banks as an assistant manager in training in May, 1992. Ms. Banks was promoted to assistant store manager in January, 1993. Hit or Miss stores open at 8:00 a.m. and may close as late as 8:30 p.m. Either the manager or an assistant manager must be on duty while a store is open. A standard work day at Hit or Miss is eight hours, with one thirty minute lunch break. Ms. Banks' standard shift was eight hours, but she sometimes worked longer hours when a store was inadequately staffed. The physical duties of an assistant store manager are listed as bending, stretching, twisting, lifting up to twenty pounds, climbing stairs, and standing for an entire work shift. (Rule 12(M) ¶ 11).

Gene Koch is Hit or Miss' District Manager for Chicago and he evaluated Ms. Banks' performance on several occasions. In January, 1993, Mr. Koch evaluated Ms. Banks while she was an assistant manager in training and gave her mostly "good" ratings. (Rule 12(M) ¶ 29).[1] Mr. Koch next evaluated Ms. Banks in August, 1993. (Rule 12(M) ¶ 31). In the August evaluation, almost all of Ms. Banks' marks were in the "needs improvement" and "unsatisfactory" categories. In October, 1993, Mr. Koch gave Ms. Banks a Substandard Corrective Counseling and Documentation Form ("Substandard form") detailing Ms. Banks' poor performance and warning of further disciplinary action should Ms. Banks fail to improve her performance. (Rule 12(M) ¶ 33). Shortly after the Substandard Form was filed, Debbie Mallett, Hit or Miss' Territorial Human Resources Manager for Chicago, withdrew Ms. Banks' August, 1993 evaluation and the Substandard form.

In July, 1993, Ms. Banks began to experience pain and a burning sensation in her feet. She visited Nancy Pickard, a doctor of podiatry, who diagnosed heel bursitis and plantar fascia bilateral (fascitis). Approximately twenty percent of the population suffers from such conditions. (Rule 12(M) ¶ 40). In August, 1993, Ms. Banks took a three week leave of absence from work to rest her feet. Upon her return to work, Ms. Banks requested she be allowed to wear lace-up shoes. After presenting medical documentation of her condition, Hit or Miss granted this request.

In December, 1993, Ms. Banks requested an eight week leave of absence beginning on December 29, 1993, to have corrective surgery on her feet. Hit or Miss granted Ms. Banks' leave request. Hit or Miss allows an employee to take up to twenty-six weeks of covered medical leave. But, the employee's job is only guaranteed for the first twelve weeks of the leave. After twelve weeks, Hit or Miss determines whether manpower needs permit it to keep an employee's position unoccupied for further time periods. (Rule 12(M) ¶ 46).

Ms. Banks had surgery on her right foot on December 29, 1993, and on her left foot on January 26, 1994. The surgery improved Ms. Banks' condition. (Rule 12(M) ¶ 81). On February 25, 1994, Kimeta Peterson, Hit or Miss' Benefits supervisor, received a facsimile from Dr. Pickard stating that, due to surgery, Ms. Banks would not be able to return to work until the first week of April. On March 3, 1994, Ms. Peterson wrote Ms. Banks a letter granting a leave extension. (Rule 12(M) ¶ 51). The letter also informed Ms. Banks that, because her leave would extend beyond twelve weeks, there was no guarantee a position would be available for her upon her return to work. (Rule 12(M) ¶ 52). The letter stated that Ms. Banks' expected date of return was April 3, 1994, and that she should contact the District Manager before her return to determine the availability of her position.[2] The letter informed Ms. Banks that if she did not return to work by April 3, 1994, and did not contact the District Manager by that date, she would be considered voluntarily terminated. *Id.*

Ms. Banks states Dr. Pickard faxed a letter to Ms. Peterson on March 28, 1994, stat-

---

1. Ms. Banks was rated on a five level scale, from lowest to highest: unsatisfactory, needs improvement, good, very good, and outstanding. (Rule 12(M) ¶ 29).

2. Mr. Koch was the District Manager of the Chicago region at the time of Ms. Banks' leave.

ing Ms. Banks could not return to work until the second week of April. Ms. Peterson claims never to have received the fax. Ms. Banks did not return to work on April 3, 1994. Since Ms. Banks did not return to work and had not contacted Mr. Koch, the District Manager, Hit or Miss determined Ms. Banks had voluntarily terminated and decided to fill her position. On April 5, 1994, Ms. Banks called Ms. Peterson to discuss the status of her leave and was told her position had been filled. Later that day Dr. Pickard faxed Ms. Peterson the same letter that was supposedly sent on March 28, 1994. (Rule 12(M) ¶ 58). Hit or Miss decided that, although Ms. Banks' position was filled, she would not be terminated immediately so that her medical and disability benefits would remain in effect for the balance of her leave period. (Rule 12(M) ¶ 59). Ms. Peterson informed Ms. Banks she would be terminated upon the conclusion of her claimed disability, or at the end of the twenty-six week short term disability benefits period, whichever occurred first. (Rule 12(M) ¶ 60).

Extensions of Ms. Banks' leave were granted twice in April and once in May. Ms. Banks continued to suffer foot pain during her recuperation period. On June 14, 1994, Ms. Peterson received a fax from Dr. Pickard stating Ms. Banks would likely be able to return to work on July 1, 1994. (Rule 12(M) ¶ 65). Dr. Pickard sent another fax on June 30, 1994, indicating Ms. Banks could return to work with the following limitations: (1) she could work no more than eight hours at one time; (2) she needed fifteen minute breaks every three to four hours; (3) she should not perform work on a ladder; and (4) she needed to wear lace-up shoes. (Rule 12(M) ¶ 67). While Ms. Banks was on crutches for a period after her surgery, when she sought to return to work she did not require a walking aide. (Rule 12(M) ¶ 80). When she stopped treating Ms. Banks, Dr. Pickard believed Ms. Banks could, with some pain, continue her "normal life activities." (Rule 12(M) ¶ 83). Ms. Banks was terminated on July 9, 1994. She has received no treatment from either Dr. Pickard or the Cook County Hospital Pain Clinic since June, 1994. (Rule 12(M) ¶ 83; Rule 12(M) Reply ¶ 77).[3]

### ADA

 Since Ms. Banks has not presented evidence of direct discrimination, she must proceed under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of discrimination Ms. Banks must prove: (1) she is a member of a protected class; (2) she was meeting Hit or Miss' legitimate job expectations; (3) she was terminated; and (4) employees not in the protected class were treated more favorably. *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 797 (7th Cir.1995). If Ms. Banks can establish a prima facie case the burden shifts to Hit or Miss to articulate a legitimate, nondiscriminatory reason for terminating Ms. Banks. *Id.* Should Hit or Miss meet the burden of showing a nondiscriminatory reason for Ms. Banks' termination, the burden shifts back to Ms. Banks to show Hit or Miss' explanation is simply a pretext for discrimination. *Id.*

Ms. Banks meets the second and third prongs of the prima facie case. She was terminated and, since her below average performance evaluations were withdrawn, there is a genuine issue of fact as to whether Ms. Banks was meeting the legitimate job expectations of Hit or Miss. For the following reasons, however, Ms. Banks has failed to meet the first and fourth prongs of the prima facie case and thus, her claim fails.

### A. Protected Class

Ms. Banks must prove she is part of a protected class. The ADA protects "qualified individual[s] with a disability." 42 U.S.C. § 12112(a). The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being

---

**3.** Ms. Banks visited the Cook County Hospital Pain Clinic on several occasions while recuperat- ing from her foot surgery.

regarded as having such an impairment." 42 U.S.C. § 12102(2).

### 1. *Physical Impairment Substantially Limiting a Major Life Activity.*

■ The Code of Federal Regulations defines "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(h)(2)(i). The term "substantially limits" means:

(i) [u]nable to perform a major life activity that the average person in the general population can perform; or

(ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The factors to be considered when determining if an individual is substantially limited in a major life activity are: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2); *accord Hamm v. Runyon,* 51 F.3d 721, 725 (7th Cir.1995). Ms. Banks claims she is disabled because she is significantly limited in her ability to walk and stand.

A number of districts, including this one, have considered ADA claims by plaintiffs arguing their particular condition significantly limited their ability to walk or stand. In *Barker v. Andrew Corp.,* No. 96 C 1111, 1997 WL 803866, at *1–4 (N.D.Ill.Dec.31, 1997), the plaintiff claimed he was substantially limited in his ability to walk because he took daily medication, could not take long walks, and was in a great deal of pain when he walked. *Id.* at *3. Much like Ms. Banks, the plaintiff had undergone surgery,[4] and was "released to work with permanent restrictions against lifting more than ten pounds, repeated bending, working at heights or overhead, working with fast moving machinery, and using stairs or ladders." *Id.* at *1. The court found the plaintiff could walk without assistance and had failed to present any specific evidence as to how limited he was in his ability to walk. *Id.* at *4. The court compared the plaintiff's ability to walk to situations described in other cases and examples given in the EEOC Compliance Manual.[5] While the court believed the plaintiff's walking ability was impaired, it determined the plaintiff was not so limited that he could be considered "disabled."

In *Graver v. National Eng'g Co.,* No. 94 C 1228, 1995 WL 443944, at *9–11 (N.D.Ill. July 25, 1995), the plaintiff had arthritis in his ankles that caused pain and stiffness. The plaintiff walked with a pronounced limp. *Id.* at *2. The plaintiff's main employment duties were to run errands and complete normal office duties, such as copying and filing. *Id.* at *1. The court found the plaintiff's impairment did not significantly restrict his ability to walk, care for himself, or work. Given the undemanding work required of the plaintiff, the court did not believe the plaintiff had established a disability. *Id.* at *10–11.

The Third Circuit also addressed a claim by a plaintiff claiming protection under the ADA due to his walking impairment. *Kelly v. Drexel Univ.,* 94 F.3d 102 (3rd Cir.1996). The plaintiff suffered from "severe post-traumatic degenerative joint disease of the right hip and protrusio acetabulum of the right hip joint." *Id.* at 104. The plaintiff complained that he could only walk a mile, could not jog, .

---

**4.** Barker underwent back surgery. *Barker,* 1997 WL 803866, at *1.

**5.** The EEOC Compliance Manual provides an example of an individual who is substantially limited in his ability to walk:

CP, who has sickle cell anemia, frequently experiences severe back and joint pain. As a result of the sickle cell disease, CP often cannot walk for more than very short distances.

CP's impairment (sickle cell anemia) substantially limits his ability to walk. The average person in the general population can walk for more than very short distances.

EEOC Compliance Manual § 902.4(c) at 5312 (1995). The Manual notes that "[i]mpairments that result in only mild limitations are not disabilities." *Id.* at 5313.

and had trouble climbing stairs. *Id.* at 106. The plaintiff, however, presented no evidence that he required crutches or a cane to aid in walking. While the court recognized it was nearly impossible "to draw a bright line delineating the point at which a condition affecting an employee's ability to walk can be regarded as a disability within the ADA," the court determined the plaintiff did not have a disability. *Id.* at 108.

In another case, the plaintiff, due to diabetes, had to undergo surgery on both feet, "resulting in amputation of toes and removal of pieces of bone." *Ingles v. Neiman Marcus Group,* 974 F.Supp. 996, 1002 (S.D.Tex. 1997). The plaintiff had "limited walking abilities" and had to wear special footwear. *Id.* The court found the plaintiff did not require a "handicapped" parking permit, did his own shopping, and was capable of tending to daily activities. *Id.* at 1004. While impaired, the court determined the plaintiff was not disabled. *See also Whitfield v. Pathmark Stores, Inc.,* 971 F.Supp. 851, 857–58 (D.Del.1997) (finding plaintiff who could not "lift more than 20 lbs, [could not] engage in repeated reaching, bending, and stooping, and [could not] stand in one place for longer than one hour in a four-hour period" without suffering severe pain and muscle spasms that lasted for several days, was not substantially limited in the life activities of standing, lifting or reaching); *Horth v. General Dynamics Land Sys., Inc.,* 960 F.Supp. 873, 878 (M.D.Pa.1997) (finding a plaintiff who could not sit or stand for more than two hours without difficulty, had trouble walking, and could not continually lift objects greater than twenty pounds, had failed to show his limitations were more than moderate restrictions and thus, was not disabled); *Stone v. Entergy Services, Inc.,* Civ.A. No. 94–2669, 1995 WL 368473, at *2–4 (E.D.La. June 20, 1995) (finding plaintiff who was unable to run, walked slowly, had trouble climbing and descending stairs, and suffered muscle weakness and partial paralysis as residual effects of polio, but did not need a walking aid, was not disabled under the ADA).

With the above cases in mind, Ms. Banks claims she is significantly limited in her ability to walk and stand. Ms. Banks, however, needed neither crutches nor a cane when she wanted to return to work. (Rule 12(M) ¶ 80). The only restrictions Dr. Pickard placed on Ms. Banks' ability to work were that Ms. Banks: (1) should only work eight hours at one time; (2) needed a fifteen minute break every three to four hours; (3) could not do ladder work; and (4) needed to wear tie-up shoes. (Rule 12(M) ¶ 67). These restrictions are not significantly restrictive compared to the average person in society.

Ms. Banks argues that her foot pain is chronic and that, to this day, she receives treatment at the Cook County Hospital Pain Clinic. (Rule 12(N) Response ¶ 77). Ms. Banks' own deposition, however, contradicts her argument. Ms. Banks testified that the last time she was treated by either Dr. Pickard or the Cook County Hospital Pain Clinic was in June, 1994. (Rule 12(M) ¶ 83; Rule 12(M) Reply ¶ 77; Banks Dep. at 142–43). Dr. Pickard, Ms. Banks' physician, testified Ms. Banks' condition would permit her to enjoy normal life activities. (Rule 12(M) ¶ 83; Pickard Dep. at 126). In response, Ms. Banks testified she was still in "pain," could only walk short distances, and could not stand for extended periods of time. (Rule 12(N) Reply ¶ 77; Banks Dep. at 140). Still, in her interrogatory responses, Ms. Banks conceded should could work if Hit or Miss made Dr. Pickard's recommended accommodations. (Df. Ex. E at 2). Ms. Banks has offered no evidence that her foot impairment impeded her ability to accomplish everyday tasks and lead a normal, average life. Indeed, before her surgery, which Ms. Banks concedes improved her condition, she was basically standing eight hours a day and doing her normal job. (Rule 12(M) ¶ 76). She does not have a disability under the ADA.

### 2. *Regarding as Having an Impairment.*

Ms. Banks also argues that even if her impairment is not substantially limiting, Hit or Miss regarded her as having an impairment and thus, she is disabled. A plaintiff may satisfy the "regarded as" test in three ways:

(1) The individual may have an impairment which is not substantially limiting but is treated by the employer or other cov-

ered entity as constituting a substantially limiting impairment;

(2) The individual may have an impairment which is only substantially limiting because of the attitudes of others toward the impairment; or

(3) The individual may have no impairment at all but is regarded by the employer or other covered entity as having a substantially limiting impairment.

*Harrington v. Rice Lake Weighing Sys., Inc.*, 122 F.3d 456, 459 (7th Cir.1997). Ms. Banks suggests that Hit or Miss considered her foot impairment substantially limiting because Hit or Miss would not grant her the accommodations she needed to return to work. Specifically, Ms. Banks argues that her inability to do ladder work and perform her duties while standing, requirements of the assistant manager position, meant Hit or Miss viewed her impairment as a substantially limiting disability.

Ms. Banks, however, does not contest the fact that Hit or Miss decided to terminate her employment before it was ever aware of Ms. Banks' requested accommodations. (Rule 12(M) ¶¶ 54–60).

Hit or Miss agreed to continue Ms. Banks' employment for the duration of her claimed disability or until Ms. Banks' twenty-six weeks of short term disability expired, so that Ms. Banks' medical and disability benefits would remain in effect for as long as possible. Ms. Banks does not contest the fact that Ms. Peterson told Ms. Banks "that her employment would be terminated upon the conclusion of her claimed disability, or at the end of 26 weeks of short term disability benefits, whichever occurred first."

Thus, on April 5, 1994, Ms. Banks was aware of Hit or Miss' decision to terminate her at the end of her disability period. Ms. Peterson received Dr. Pickard's note requesting accommodations for Ms. Banks on June 30, 1994, nearly three months after Hit or Miss decided to terminate Ms. Banks. (Rule 12(M) ¶ 67). Hit or Miss had no reason to even consider the accommodations because the decision had already been made to terminate Ms. Banks.

Ms. Banks complains that in June, 1994, Ms. Peterson and a "Ms. Laing" told her Hit or Miss did not accommodate disabilities. First, since Ms. Banks has not contested the fact Hit or Miss decided to terminate her in April, 1994, these comments are not relevant to the termination decision. Second, Ms. Banks has presented no evidence as to who Ms. Laing is or what role she might have had in the employment decision. Based on the evidence before me, Ms. Laing's comment would not be admissible at trial and cannot be considered on this motion for summary judgment. *Whitted v. General Motors Corp.*, 58 F.3d 1200, 1204 (7th Cir.1995).

Ms. Banks suggests there is at least one comment that was made before April, 1994, that indicates Hit or Miss regarded her as disabled. Before Ms. Banks' surgery, but after she had taken a leave of absence in August, 1993, Ms. Banks requested that she be allowed to wear lace up shoes at work. Hit or Miss granted Ms. Banks' request after she provided medical documentation. Ms. Banks complains that Mr. Koch, a Hit or Miss District Manager, made a profane, impliedly derogatory comment about the shoes. The issue is whether the comment, standing alone, indicates Hit or Miss regarded Ms. Banks as being substantially limited in her ability to walk or stand. It does not. While the comment was inappropriate, it does not indicate Hit or Miss perceived Ms. Banks as being substantially impaired in her ability to walk or stand. At most, it indicates a supervisor's displeasure with an employee breaking a dress code. Ms. Banks has provided no evidence that Hit or Miss restricted her employment responsibilities or otherwise treated her in a manner that would indicate Hit or Miss perceived Ms. Banks as being substantially limited in her ability to walk or stand.

### B. *Employees Not in the Protected Class.*

As part of the prima facie case, Ms. Banks must show she was treated less favorably than employees not in the protected class. *DeLuca*, 53 F.3d at 797. Ms. Banks has presented no evidence regarding any other employee at Hit or Miss. The record is devoid of any mention of other assistant managers or how they were treated. Ac-

cordingly, Ms. Banks has failed to show that other employees at Hit or Miss were treated more favorably than her.

### Conclusion

Ms. Banks does not have a disability and was not perceived as having a disability by Hit or Miss. She has failed to satisfy her burden of proof as to the first and fourth prongs of the prima facie case of disability discrimination. Accordingly, Hit or Miss' motion for summary judgment is granted.