Rosario J. CAVALLARO, Sr., Plaintiff,

v.

CORNING INCORPORATED,
Defendant.

No. 97–CV–6548L.

United States District Court,
W.D. New York.

April 28, 2000.

Rosario J. Cavallaro, Sr., Corning, NY, plaintiff pro se.

William E. Burkhart, Rochester, NY, for Rosario J. Cavallaro, Sr., plaintiff.

Jill K. Schultz, Nixon, Peabody, LLP, Rochester, NY, for Corning Incorporated, defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

### Procedural Background

In his amended complaint in this employment discrimination action, Rosario Cavallaro ("Cavallaro" or "plaintiff"), a former employee of defendant Corning Incorporated ("Corning" or "defendant"), alleges disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). Presently before the Court is Corning's motion for summary judgment.

### Factual Background

Plaintiff was employed as a carpenter and maintenance associate at Corning's Erwin, New York manufacturing facility ("the Erwin facility") from 1989 until 1995. On March 25, 1994, the Occupational Safety and Health Administration ("OSHA") published a standard that requires all covered companies to conduct plant-wide hazard assessments to determine employees' exposure to head, face, hand and foot injuries. 29 C.F.R. § 1910.132. Later that year, Corning retained an outside consultant, the Julius Kraft Company, to conduct a plant-wide safety audit at the Erwin

facility. In conjunction with that audit, the Julius Kraft Company identified the need for tradespersons to wear safety shoes at the Erwin facility. Corning thereupon implemented a rule, effective March 15, 1995, requiring steel-toed foot protection for all carpenters and maintenance persons working at its Erwin facility.

Corning arranged for a vendor to fit employees for safety shoes at the Erwin facility, and it also provided each of its employees subject to the rule a seventy dollar benefit to purchase the shoes. Cavallaro obtained a pair of safety shoes from Corning's vendor. However, he stopped wearing the shoes after two to three days because of pain in his right foot that he attributed to the safety shoes. Cavallaro returned to street shoes without the permission of Corning management. Only after Cavallaro's supervisor, Ron Resue, observed plaintiff without his safety shoes, did Cavallaro complain of any discomfort. In response to Cavallaro's complaints, Resue instructed plaintiff to procure a more comfortable pair of shoes from another vendor of plaintiff's choice, and that Corning would pay for them.

Plaintiff purchased a second pair of safety shoes, but plaintiff claimed that they too were uncomfortable. After one day, plaintiff returned to wearing street shoes at work. On April 10th, Resue again discovered plaintiff in violation of the safety shoe rule. On this occasion, plaintiff told Resue that he would not wear safety shoes at work. As a result, Resue suspended plaintiff indefinitely for insubordination. The suspension was subsequently reduced to a one day suspension provided that plaintiff comply with the safety shoe rule. Corning's personnel manager informed plaintiff that wearing steel-toed shoes was a condition of employment, but that plaintiff would be permitted to wear company-provided toe caps until plaintiff obtained a pair of safety shoes that he found comfortable. Once again, Corning informed plaintiff that it would pay for another pair. Corning also offered to pay for a custom-molded pair of safety shoes, if plaintiff was unable to find a comfortable pair from the standard suppliers of pre-fitted shoes.

Plaintiff obtained a third pair of safety shoes, at Corning's expense, but he wore them for only two days. Plaintiff found the fourth pair he obtained unsatisfactory after four days. His fifth pair was custom-made by Creative Prosthetics, but he wore those for less than five minutes.

In late July 1995, plaintiff's supervisor once again observed plaintiff wearing his street shoes at work. After a brief time when plaintiff wore steel-toed shoes, plaintiff removed himself from work on August 10, 1995, alleging that the shoes forced him to take a disability leave. Plaintiff has refused to return to work unless he is excused from wearing safety shoes. Corning maintains that it discharged plaintiff thereafter for his failure to follow company rules.

An EEOC charge, and this action followed.[1]

### Contentions of the Parties

In support of its motion for summary judgment, defendant contends that: (1) plaintiff's disability discrimination and retaliation claims are time-barred because he filed his charge more than 300 days after he knew of Corning's allegedly unlawful conduct; (2) plaintiff's newly asserted disparate impact claim is beyond the scope of the charge he filed and (3) plaintiff cannot establish a *prima facie* case of disability discrimination because plaintiff is not a

1. Plaintiff was represented by counsel when the summary judgment motion was filed. He responded in detail to the motion. After the matter was fully briefed, the relationship between plaintiff and counsel deteriorated to the extent that I allowed counsel to withdraw. Thereafter, plaintiff was given time to obtain new counsel or to submit matters, *pro se*. Plaintiff did not obtain new counsel but did submit additional papers in opposition to Corning's motion for summary judgment. I have considered all of the papers filed by plaintiff and his counsel relating to the pending motion.

qualified individual with a disability under the ADA.

Plaintiff[2] maintains that there are questions of fact, and, therefore, summary judgment should be denied. In particular, plaintiff asserts: (1) plaintiff has satisfied all administrative prerequisites for suit; (2) he has alleged a continuing violation; (3) his disparate impact claim is an alternative theory upon which relief may be granted; (4) he is disabled under the ADA; and (5) Corning's employment decision was based upon discriminatory "myth, fear, or stereotype."

## DISCUSSION

### A. Summary Judgment—General Standards

The standard for deciding summary judgment motions is well established. Rule 56(c) provides that a motion for summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under the rule, the burden is on the moving party to inform the court of the basis for its motion and to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (quoting Fed. R.Civ.P. 56(e)).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348. When perusing the record to determine whether a rational fact-finder could find for the non-moving party, however, all reasonable inferences must be drawn in favor of the non-moving party. *See Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

The general principles underlying a motion for summary judgment fully apply to discrimination actions. Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Association of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). Consequently, once the moving party has met its burden, the non-moving party in a discrimination action must come forward with evidence upon which a rational fact-finder could return a verdict in his favor. For a plaintiff in a discrimination case to survive a motion for summary judgment, he or she must do more than present "conclusory allegations of discrimination," *Meiri v. Dacon*, 759 F.2d 989 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); he or she must offer "concrete particulars" to substantiate the claim. *Id.* (cited in *Duprey v. Prudential Ins. Co.*, 910 F.Supp. 879 (N.D.N.Y.1996)).·

---

**2.** Plaintiff's prolix 36 page memorandum of law is in violation of the page limitations referenced in Local Rule 7.1(f). Nevertheless, I have reviewed the entire memorandum.

## B. The Applicable Periods of Limitation

From the outset, it is evident that plaintiff's claims suffer from the fatal procedural infirmity that plaintiff's claims are untimely. Even without this infirmity, however, summary judgment would still be warranted for reasons that will be discussed.

In essence, plaintiff claims that he was discriminated against based on his inability to wear safety shoes. It is well-established that any discrimination claim he may have would accrue when he knew or had reason to know of the injury serving as the basis for his claim. *See, e.g., Harris v. City of New York*, 186 F.3d 243, 247–249 (2d Cir.1999); *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir.1994); *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir.1992).

Accordingly, I must determine when plaintiff knew or should have known that he would not be permitted to work if he refused to wear steel-toed shoes. From that date he had 300 days to file his ADA complaint with EEOC. It is settled that allegations of discrimination occurring more than 300 days prior to the date a charge is filed are time-barred. *See*, 42 U.S.C. § 12117(a) (incorporating by reference the procedures set forth under 42 U.S.C. § 2000e–5(e)(1)); *Butts v. New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993) (Title VII case).

 In this instance, the record is clear. Plaintiff learned of Corning's safety shoe policy before it was implemented in early 1995. His supervisor repeatedly advised him that he had to wear safety shoes, and he was reprimanded for failing to do so. He was suspended in April 1995 because of his refusal to wear safety shoes. He himself admits that he threatened to file a complaint against Corning on this issue in May 1995. Amended Complaint, para. 30. Finally, he left work on August 10, 1995 based upon his claim the required safety shoes caused him too much discomfort. Clearly, plaintiff knew or should have known of his alleged injury from the conduct upon which he now bases his claim by August 1995 at the very latest. The disciplinary actions imposed by Corning coupled with plaintiff's threat of litigation and his ultimate departure from work over this issue demonstrate beyond peradventure his knowledge prior to August 10, 1995 of the discriminatory conduct he now alleges. Moreover, the Second Circuit has noted that courts must not only look at what a plaintiff actually knew but also at what he had reason to know. *Harris v. City of New York*, 186 F.3d at 249; *Cornwell*, 23 F.3d at 703. Given Corning's adherence to its rule, plaintiff had ample reason to know well before August 1995 that Corning would not stray from its position when plaintiff would again attempt to return to work in March 1996 without wearing safety shoes.

Plaintiff, however, did not file his EEOC charge until October 2, 1996,[3] which was well over 300 days after he knew or had reason to know that he would not be permitted to work without wearing safety shoes. Indeed, the focus of plaintiff's claims centers around Corning's adherence to its safety shoe policy that even plaintiff concedes was implemented on March 15, 1995, over 500 days before plaintiff filed his charge. Therefore, plaintiff's ADA claim is time-barred.

In an attempt to salvage his claim, plaintiff now alleges a continuing violation. As a preliminary matter, I note that as a general rule, the courts of this circuit do not favor continuing violation arguments. *See Lloyd v. WABC–TV*, 879 F.Supp. 394, 399 (S.D.N.Y.1995); *Blesedell v. Mobil Oil*

**3.** Although plaintiff rejects the charge filed on October 2, 1996 as a "forgery" (Dkt.# 37), it is the earliest charge presented to the court and it is therefore the charge that would be best for plaintiff in terms of the 300 day charge-filing rule. Viewing the record in the light most favorable to plaintiff, I consider October 2, 1996 as the date plaintiff originally filed his charge, and October 21, 1996 as the date plaintiff amended his charge.

*Co.,* 708 F.Supp. 1408, 1415 (S.D.N.Y. 1989). "Indeed, only 'compelling circumstances' will warrant application of the exception to the statute of limitations." *Blesedell,* 708 F.Supp. at 1415 (citation omitted).

Nonetheless, the Second Circuit has held that "a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). Thus, "[w]here a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Id.*

■ A plaintiff may rely on a continuing-violation theory to avoid having his claim time-barred "provided such a continuing violation is '*clearly*' " asserted both in the EEOC filing and in the complaint. *Miller v. Int'l Tel. and Tel. Corp.,* 755 F.2d 20, 25 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985) (emphasis added). Here, plaintiff did not specifically allege a continuing violation from the implementation of the safety shoe policy in his administrative charge [4] or in his amended complaint in this action. Instead, plaintiff misinterprets the fact that the "Continuing Action" box was checked on his EEOC charge as evidence that the EEOC determined the existence of a continuing violation. Plaintiff's Memorandum, Dkt. # 29, pp. 10, 12. The EEOC made no such determination. Rather, it found that it lacked jurisdiction over plaintiff's ADA claim because it did not consider plaintiff disabled under the statute. Schultz Aff., Dkt. # 22, Ex. H. In any event, the fact that the "Continuing Action" box was

checked on plaintiff's EEOC charge was insufficient to assert continuing violation, since the factual allegations in the charge concerned only conduct that began on one discrete date, March 11, 1996. *See Carrasco v. New York City Off–Track Betting Corp.,* 858 F.Supp. 28, 31–32 (S.D.N.Y. 1994).

■ Even giving plaintiff the benefit of the doubt with respect to the adequacy of his EEOC pleading, the proof does not support his claim of a continuing violation. An employer's failure to reinstate a plaintiff who alleges discriminatory treatment does not give rise to a continuing violation. Were that the case, an employee who stopped working because of an employer's allegedly discriminatory conduct and whose claim would otherwise be time-barred could easily circumvent the ADA's 300–day filing requirement simply by attempting to return to work. *Cf. Burnam v. Amoco Container Co.,* 755 F.2d 893, 894–95 (11th Cir.1985) (defendant's failure to rehire plaintiff did not make discriminatory discharge claim timely); *Daughtry v. King's Dep't Stores, Inc.,* 608 F.2d 906, 909 (1st Cir.1979) (defendant's termination of plaintiff's employment was a "completed, one-time violation," and its failure to rehire him did not give rise to continuing violation); *White v. Zema Systems Corp.,* 95–CV–7529, 1996 WL 666683, *3 (N.D.Ill. Nov.14, 1996) (original discharge and failure to rehire were not part of continuing violation).

### C. Plaintiff's Disparate Impact Claim

■ A district court may hear only claims that are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to those alleged in the EEOC charge. *See Butts v. City of New York Dep't of Housing,* 990 F.2d at 1401. This exhaustion requirement is an essential ele-

---

**4.** He merely alleged a violation from March 11, 1996, when he was not permitted to return to work, forward. There is no allegation that the violation continued from early 1995, when he first learned of the allegedly discriminatory conduct. In fact, the charge identifies March 11, 1996 as the "earliest" date the alleged discrimination occurred.

ment of the ADA's statutory scheme. *Cf. id.* "'[T]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC.'" *Id.* (citations omitted).

The Second Circuit has designated three circumstances in which claims that were "not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action." *Id.* at 1402. Of the three circumstances only one arguably applies here and that is essentially an allowance of "loose pleadings," based upon the recognition that many claimants are unrepresented at the time that they file their administrative charge and, thus, their failure to properly articulate all relevant theories of liability should not be fatal to their later pursuit of federal claims. Thus, claims not included in the EEOC charge may still be pressed in federal court when "the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (citations omitted).

However, the loose pleading allowance is not satisfied by vague, generalized statements. Specific factual allegations must be made in order for the EEOC to be able to investigate them reasonably. *Butts v. City of New York Dep't of Housing,* 990 F.2d at 1403.

The focus in determining whether the allegations of a federal complaint are "reasonably related" to those contained in the EEOC charge remains on the facts giving rise to the claim of discrimination. "'Judicial claims which serve to amplify, clarify or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate.'" *McGuire v. United States Postal Service,* 749 F.Supp.

1275, 1287 (S.D.N.Y.1990) (citations omitted).

Here, plaintiff's EEOC charge does not mention a disparate impact theory. No fair reading of plaintiff's EEOC charge suggests that he was raising any disability discrimination claim other than one for disparate treatment. Plaintiff relies upon *Gomes v. Avco Corp.,* 964 F.2d 1330 (2d Cir.1992). In *Gomes,* the Second Circuit held that the district court erred in dismissing a disparate impact claim on the ground that the plaintiff's EEOC charge failed to give fair notice of the claim. The plaintiff's EEOC charge alleged: the plaintiff was a Portuguese male; he had been denied certain promotions because of a rule requiring eight years of practical experience as a prerequisite to promotion; he believed he satisfied the eight-year rule; less qualified employees were promoted to the positions; and the plaintiff was the only Portuguese employee in his job classification.

The Second Circuit stated that "[t]o be sure, this complaint most naturally support[ed] a claim of intentional discrimination." The court added, however, that "once the EEOC investigated the case and found that Gomes did not satisfy the eight year rule, it would have been perfectly natural for the EEOC to question the necessity of the eight year rule itself," particularly in light of the plaintiff's allegation that people with less experience than he (and thus less than eight years) had been promoted ahead of him. The court stated that "[g]iven that Gomes had also alleged that he was the only Portuguese in his job category, the EEOC could then have reasonably inquired as to whether this possibly unnecessary rule had a discriminatory impact on employees of Portuguese descent," and that therefore "an investigation of Gomes' disparate impact claim would reasonably have flowed from an investigation of his disparate treatment claim." *Id.* at 1334–35.

I believe, however, that *Gomes* is factually distinguishable from the case at bar. The EEOC complaint here could not reasonably have alerted the EEOC to investigate disparate impact. The significant factor in *Gomes* was that the plaintiff's factual allegations in his EEOC complaint, even though they did not expressly assert a disparate impact theory, nonetheless could reasonably have been expected to alert the EEOC to such a claim. The plaintiff had alleged that he was denied a promotion because of a rule that on its face appeared to be nondiscriminatory, but his allegations also suggested that there was no legitimate reason for the rule. Since the plaintiff was the only Portuguese employee in his job category, it was also obvious that the rule could have had a disparate impact on Portuguese employees.

■ In contrast, Cavallaro's EEOC charge gave no hint of any basis for a disparate impact claim. He alleged only that he "was being discriminated against because of [his] disability." He made no mention whatsoever of any Corning rule or the impact of any Corning decision on any employees other than himself. On the other hand, with respect to an age discrimination claim which plaintiff later dropped, plaintiff specifically referenced a "pattern and practice"[5] of discrimination by Corning against "older employees." The fact that plaintiff elected not to make any similar allegation in support of his disability claim significantly undermines the credibility of plaintiff's present contention that his new disparate impact claim would have flowed from the EEOC's investigation of plaintiff's disparate treatment claim.

Plaintiff contends that the EEOC would naturally have investigated the application of Corning's rules to all employees. This is simply too far a stretch. To adopt plaintiff's position would allow virtually every disparate treatment claim to encompass a disparate impact claim as well. Plaintiff's disability discrimination claim based upon a theory of disparate impact must therefore be dismissed on the additional ground that it exceeds the scope of his administrative charge. *See Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir.1996) ("an administrative agency investigating a retaliation claim would almost certainly fail to inquire into a theory of disparate impact discrimination ..."); *McKinney v. Eastman Kodak Co.*, 975 F.Supp. 462 (W.D.N.Y.1997) (denying plaintiff's motion to amend complaint to add claim of disparate impact, since plaintiff's EEOC charge was limited to disparate treatment allegations); *Spurlock v. NYNEX*, 949 F.Supp. 1022, 1029 (W.D.N.Y.1996) (dismissing plaintiff's disparate impact claim on ground that it was unrelated to his EEOC charge alleging workplace harassment); *Leisen v. City of Shelbyville*, 968 F.Supp. 409, 421 (S.D.Ind. 1997) (plaintiff's EEOC charges, which alleged disparate treatment and retaliation, made no reference to claim of disparate impact that plaintiff asserted in subsequent lawsuit, nor did they include factual allegations which might relate in any way to such a claim; mere fact that allegations of disparate treatment related to sex discrimination was not enough to bring disparate impact claim of sex discrimination within scope of EEOC charge); *Beth v. Espy*, 854 F.Supp. 735, 738 (D.Kan.1994) (denying plaintiff's motion to amend complaint to add claim of disparate impact, since plaintiff's EEOC charge of disparate treatment "fail[ed] to even mention the supervisory experience requirement which form[ed] the basis of her disparate impact claim"); *Blake v. City of Chicago*, No. 90 C 2967, 1991 WL 34634 *3 (N.D.Ill. Mar.31, 1991) (disparate impact claim was not reasonably related to disparate treatment claim raised in EEOC charge).

5. While a pattern and practice claim may be separate and distinct from a disparate impact claim, at the very least it may be argued that it might have given the EEOC notice to investigate claims of discriminatory conduct against individuals other than plaintiff.

## D. Plaintiff's Disability Discrimination Claim

The ADA prohibits discrimination in the hiring, advancement, or discharge of an otherwise qualified employee because of such individual's disability. 42 U.S.C. § 12112(a). Courts evaluate disparate treatment employment discrimination claims using the burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The *McDonnell Douglas* burden-shifting analysis is also utilized in analyzing claims based on the ADA. *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir.1998); *Glidden v. County of Monroe*, 950 F.Supp. 73, 75 (W.D.N.Y.1997).

■ In order to establish a *prima facie* case of disability discrimination, plaintiff must show that: (1) he is "disabled" within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job; and (3) he suffered adverse employment action because of his disability. *Wernick v. Federal Reserve Bank*, 91 F.3d 379, 383 (2d Cir.1996); *see also Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–870 (2d Cir.1998); *Kotlowski v. Eastman Kodak Co.*, 922 F.Supp. 790, 796 (W.D.N.Y.1996). "[T]he plaintiff cannot meet this burden through reliance on unsupported assertions," but "must come forward with evidence that would be suffi-

cient to support a jury verdict in his favor." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995).

### 1. *Disability Under the ADA*

To survive a summary judgment motion, an ADA plaintiff must meet the threshold burden of establishing that he is "disabled," as that term is defined under the statute. An individual is considered disabled, within the meaning of the ADA, if he: (1) has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such an impairment; or (3) has been regarded as having such an impairment. 42 U.S.C. § 12102(2)(A)–(C).

The Equal Employment Opportunity Commission ("EEOC") has defined a "physical impairment" under the statute as:

Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1).[6]

■ In the instant case, plaintiff alleges that he cannot wear safety shoes without pain or injury to his right foot.[7] I note initially that his inability to wear a certain shoe does not appear to constitute a physical impairment as that term is defined. Since I do not believe plaintiff to have the

---

6. Although "[t]he Supreme Court has recently drawn into question the degree of deference due to the EEOC's interpretations of the term 'disability' .... [n]onetheless, until a more definite pronouncement is forthcoming, it remains the law of this Circuit that [the Second Circuit] will give weight to the EEOC's interpretations." *Muller v. Costello*, 187 F.3d 298, 313 (2d Cir.1999).

7. In response to the instant motion, plaintiff asserts that he "suffers from multiple physical

impairments to his back, feet, and heart." Plaintiff's Memorandum, Dkt. # 29, p. 15–16. He made no similar allegations in his amended complaint. Moreover, he has submitted no evidence demonstrating that he has any impairments to his back or heart that substantially limit any major life activity. To the contrary, the medical records establish that the ailments he may have do not rise to the necessary level. I, therefore, address in detail only his claim regarding his foot problems.

requisite physical impairment, his claim is subject to dismissal on that ground alone.

Moreover, even assuming that plaintiff does have a physical impairment, such an impairment, standing alone, does not necessarily constitute a disability under the ADA. *Hazeldine v. Beverage Media, Ltd.,* 954 F.Supp. 697, 703 (S.D.N.Y.1997). In fact, an impairment "may affect an individual's life without becoming disabling." *Id.* at 703. Therefore, plaintiff must demonstrate that the impairment "substantially limits" one or more "major life activities." Defendant contends that plaintiff cannot meet this definition.

The EEOC has defined "substantially limits" to mean:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The EEOC defines "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *Heyman, v. Queens Village Committee For Mental Health,* 198 F.3d 68, 72 (2d Cir.1999). The ADA's requirement "that, in order to constitute a disability under its terms, an impairment must substantially limit a major life activity underscores that the impairment must be significant, and not merely trivial." *Reeves v. Johnson Controls World Services, Inc.,* 140 F.3d 144, 151 (2d Cir.1998) (internal quotation marks omitted); *Byrne v. Board of Educ.,* 979 F.2d 560, 564 (7th Cir.1992) ("[t]he statute's inclusion of the limiting adjectives 'substantial' and 'major' emphasizes that the impairment must be a significant one"). In other words, not any limitation, but only a

"substantial" limitation, of not any life activity, but only a "major" life activity, will constitute a disability within the meaning of the statute. *Reeves v. Johnson Controls World Services, Inc.,* 140 F.3d at 151; *see also Ryan,* 135 F.3d at 870 ("in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities").

■ Cavallaro first claims that he has an impairment that limits him in the major life activity of walking. He has failed, however, to demonstrate that any impairment he may have, if indeed he even has one, *substantially* limits his walking. To the contrary, plaintiff admitted in his deposition that not only can he walk but that he can walk two to three holes of golf, and that he golfs "a couple of times per week." Plaintiff's Dep., pp. 88, 119–121. It is also evident that Cavallaro's foot problem does not substantially interfere with his ability to cook, go to the grocery store, drive, or vacuum. *Id.,* pp. 122–123. Indeed, plaintiff submitted the report of a physician who noted that Cavallaro "walks with a good gait with just a barely perceptible limp on his right foot." Ex. B to Burkhart Aff. Dkt. # 30, p. 3. To the extent plaintiff has any limitations whatsoever, they are not substantially limiting on any major life activity. *See Talk v. Delta Airlines, Inc.,* 165 F.3d 1021 (5th Cir.1999) (inability to wear steel-toed shoes did not render plaintiff substantially limited in the major life activity of walking); *see also Kelly v. Drexel Univ.,* 94 F.3d 102, 106–08 (3d Cir. 1996) (holding that plaintiff who did not require crutches or cane not "disabled" as a matter of law); *Banks v. Hit or Miss, Inc.,* 996 F.Supp. 802, 807 (N.D.Ill.1998) (finding plaintiff not "disabled" as a matter of law where she could only walk short distances and could not stand for extended periods of time); *Barker v. Andrew Corp.,* 1997 WL 803866, at *1–4 (N.D.Ill.1997) (finding plaintiff's walking ability impaired but not so limited that he could be consid-

ered "disabled"); *Ingles v. Neiman Marcus Group*, 974 F.Supp. 996, 1003 (S.D.Tex.1997) (plaintiff with "limited walking abilities" and special footwear not disabled as matter of law); *Horth v. General Dynamics Land Sys., Inc.*, 960 F.Supp. 873, 878 (M.D.Pa.1997) (plaintiff who could not sit or stand for more than two hours without difficulty and had trouble walking could not show limitations were more than moderate restrictions and thus, was not disabled). The undisputed facts in this case demonstrate that Cavallaro was not substantially limited in the major life activity of walking. *See Brower v. Continental Airlines, Inc.*, 62 F.Supp.2d 896, 904 (E.D.N.Y.1999).

Although he does not claim it in his amended complaint, Cavallaro now also claims that he has an impairment that limits him in the major life activity of working. When an individual, such as Cavallaro, makes such a claim, he must prove that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i).

Here, plaintiff's alleged impairment is that he cannot wear steel-toed shoes. Since wearing such shoes was a requirement of his job as a carpenter at Corning's Erwin facility, he was unable to perform his job. The inability to perform a single, particular job, however, does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(i). "[T]he impairment must substantially limit employment generally." *Byrne v. Board of Educ.*, 979 F.2d at 565; *Castro v. Local 1199*, 964 F.Supp. 719 (S.D.N.Y.1997). *See also, Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723–24 (2d Cir.1994); *Daley v. Koch*, 892 F.2d 212, 215 (2d Cir.1989); *Gittens v. Garlocks Sealing Technologies*, 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Sharp v. Abate*, 887 F.Supp. 695, 699 (S.D.N.Y.1995) ("[a]n impairment that limits an employee's ability

to perform only one job is not a disability under the ADA") (citations omitted).

Further, when the major life activity at issue is the ability to work, the court may consider the following three additional factors in determining whether an individual is substantially limited: (1) "[t]he geographical area to which the individual has reasonable access"; (2) "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs)"; and/or (3) "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes)." 29 C.F.R. § 1630.2(j)(3)(ii)(A)–(C).

On a number of occasions, plaintiff has stated that he can work as a carpenter if he is not required to wear steel-toed shoes. He has also testified that he is qualified to work as a pipefitter, tinworker, and millwright, and that he "can do anything with glass." Plaintiff's Dep., pp. 9–10, 22. His inability to wear steel-toed shoes does not substantially limit his opportunities for employment generally. *See Talk v. Delta Airlines, Inc.*, 165 F.3d at 1025 (inability to wear steel-toed shoes in a single position did not render plaintiff substantially limited in the major life activity of working). Even if plaintiff is deemed to have an impairment, presumably, he would still be qualified to work as a carpenter, pipefitter, tinworker, and millwright in those jobs in his immediate geographical area which do not require that employees wear steel-toed shoes. Cavallaro was not substantially limited in the major life activity of working.

Even though plaintiff has not shown that he suffers from an impairment that sub-

stantially limits a "major life activity" within the meaning of the ADA, he may still be considered "disabled" for purposes of the statute if he could show that he was "regarded as having such an impairment." 42 U.S.C. § 12102(2)(C). The EEOC regulations define "is regarded as having such an impairment" as follows:

> (1) Has a physical or mental impairment that does not substantially limit a major life activity but is treated by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has none of the impairments defined [by the EEOC regulations] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l*).

Plaintiff does not allege that his impairment substantially limits a major life activity only because of "the attitudes of others toward [his] impairment." *Id.*, § 1630.2(*l*)(2). Nor does he assert that he was treated by Corning as "having a substantially limiting impairment." *Id.*, § 1630.2(*l*)(3). Rather, he invokes 29 C.F.R. § 1630.2(*l*)(1) (and charges that Corning based its decision to require safety shoes on its "concern for liability and, inferably [sic], workers' compensation costs.") From that he posits that Corning discriminated against plaintiff individually because, according to plaintiff, it regarded him as disabled. Plaintiff's Memorandum, Dkt. # 29, p. 35. This leap is illogical and entirely unsubstantiated.

 Corning does not dispute that it knew of plaintiff's foot problem before he

was dismissed. However, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir.1996); *see also Talk v. Delta Airlines, Inc.*, 165 F.3d at 1025 (finding that employer did not regard plaintiff as disabled notwithstanding employer's admission that plaintiff could not work in certain department because of her inability to wear steel-toed shoes). Plaintiff must show that defendant perceived his impairment as substantially limiting the exercise of a major life activity. Because he has presented no evidence tending to show that Corning perceived it as such, plaintiff has failed to meet this burden. *Reeves v. Johnson Controls World Services, Inc.*, 140 F.3d at 153.

### 2. *Pretext*

In sum, plaintiff has failed to establish a *prima facie* case on a variety of levels. However, even if plaintiff is deemed to have established a *prima facie* case, he has not rebutted the legitimate nondiscriminatory reasons articulated by Corning for terminating his employment—that plaintiff refused to abide by Corning's safety rules.[8] It is particularly instructive that Corning's safety shoe policy was precipitated by its laudable attempt both to comply with OSHA regulations and to insulate its employees from injury in the workplace. Plaintiff was not treated any differently than any other employee who performed similar work at the Erwin facility.[9] As plaintiff concedes, the safety shoe policy required "all" employees to wear safety shoes. Plaintiff's Memorandum, Dkt.

---

**8.** Whether Corning's safety rules were necessary is not the issue. What matters is why the employer did what it did, not whether it was wise to do so. *See Montana v. First Fed. Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir.1989) (federal courts do not have a "roving commission to review business judgments") (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n. 8 (7th Cir. 1987)); *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.) (courts "must refrain from intruding

into an employer's policy apparatus or second-guessing a business's decision-making process"), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

**9.** While plaintiff claims that Corning's safety shoe policy has not been enforced with respect to other employees, plaintiff has not identified the other employees to whom he refers.

# 29, p. 4. Such uniform treatment cannot give rise to a disparate treatment claim.

 Plaintiff has put forth no credible evidence showing that disability discrimination was more likely than not the real reason that motivated Corning to act as it did with respect to plaintiff. In other words, plaintiff's speculations are insufficient to establish pretext.[10] *See Hicks,* 509 U.S. at 509–511, 113 S.Ct. 2742 (the plaintiff retains the ultimate burden of proving that the proffered rationale is pretextual and that the employer was discriminatorily motivated); *Duclair v. Runyon,* 166 F.3d 1200 (2d Cir.1998) (unpublished opinion) ("the Supreme Court has made clear, as have numerous opinions from this court, that the burden of persuasion—the obligation to prove his or her case—is at all times borne by the plaintiff") (Title VII case).

## E. The Retaliation Claim

Absent direct proof, "[t]he order and allocation of burdens of proof in retaliation cases follow that of general disparate treatment analysis as set forth in *McDonnell Douglas Corp. v. Green* ... " *Sumner v. U.S. Postal Service,* 899 F.2d 203, 208 (2d Cir.1990) (citations omitted). To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show (1) "protected participation or opposition ... known by the alleged retaliator," (2) "an employment action disadvantaging the person engaged in the protected activity," and (3) "a causal connection between the protected activity and the disadvantageous employment action." *See DeCintio v. Westchester County Med. Center,* 821 F.2d 111, 115 (2d Cir.1987), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987) (Title VII case); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir. 1995).

10. In fact, rather than alleging that the implementation of Corning's safety shoe policy was a pretext for disability dicrimination, plaintiff alleges that "Corning's implementation of its steel-toed safety shoe policy is a pretext for eliminating employees, such as plaintiff, who are protected by [a 1986] job security provi-

Drawing all factual inferences in plaintiff's favor, I do not find that Cavallaro has established a *prima facie* case here. Cavallaro has not established any causal connection between any protected activity and any disadvantageous employment action.

## CONCLUSION

Defendant's motion for summary judgment (Dkt.# 20) is granted, and the complaint is dismissed with prejudice.

IT IS SO ORDERED.

sion." Amended Complaint, para. 23. Plaintiff has not submitted the document containing the so-called "job security provision." Even in the unlikely event that this wholly unsupported claim was true, the ADA does not provide any remedy for such a claim.