Matthew MaDONNA,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 807, Docket 88–6272.

United States Court of Appeals,
Second Circuit.

Argued Feb. 16, 1989.

Decided June 20, 1989.

Judd Burstein, P.C., New York City (Gustave Newman, P.C., Paul F. Campagno, New York City, of counsel), for plaintiff-appellant.

James L. Cott, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Richard M. Schwartz, Asst. U.S. Atty., of counsel), for defendant-appellee.

Before LUMBARD, MINER, Circuit Judges, and SPRIZZO, District Judge.[*]

LUMBARD, Circuit Judge:

Matthew Madonna appeals from a judgment of the District Court for the Southern District, Carter, J., entered November 15, 1988, granting the government's Fed.R.Civ. P. 12(c) motion to dismiss Madonna's complaint for failure to state a claim upon which relief can be granted and for failure to plead fraud with particularity, Fed.R. Civ.P. 9(b). Madonna, seeking relief from an order of civil contempt issued against him for his refusal to testify under a grant of immunity before a grand jury, claims that the government perpetrated fraud upon the court when it misrepresented its reasons for calling him to testify. The civil contempt sentence resulted in Madonna's incarceration for 528 days, during which time his previously imposed sentence of 30 years for federal narcotics offenses was stayed. We agree with the district court that Madonna alleges no facts to support his claim and that he did not plead fraud with sufficient particularity. We therefore affirm.

Madonna was convicted by a jury before Judge Carter in December 1976 for conspiracy to import, and possession with intent to distribute, heroin in violation of federal narcotics laws. He was sentenced to a term of thirty years, which he is presently serving in Lewisburg, Pennsylvania. We affirmed. *United States v. Madonna*, 556 F.2d 562 (2d Cir.), *cert. denied*, 434 U.S. 919, 98 S.Ct. 392, 54 L.Ed.2d 275 (1977).

In November 1981, Madonna filed a petition for habeas corpus in the Southern District, seeking to vacate his conviction on the grounds that it had been obtained through the use of perjured testimony and prosecutorial suppression of material information. The petition was *sub judice* during the time relevant to the instant appeal and was denied in April 1982. We affirmed by order in September 1982. *Madonna v. United States*, 697 F.2d 293 (2d Cir.1982),

cert. denied, 459 U.S. 1108, 103 S.Ct. 734, 74 L.Ed.2d 957 (1983).

In December 1981, while incarcerated in Lewisburg, with his habeas petition still pending before Judge Carter, Madonna was summoned to appear before a grand jury in the Southern District. Assistant U.S. Attorney (AUSA) William Tendy informed him that he would be questioned about his prior narcotics activity and his knowledge regarding certain drug dealers in the New York area. At his first appearance before the grand jury on January 21, 1982, Madonna invoked his fifth amendment right not to incriminate himself and refused to testify. On February 17, Judge Edelstein ordered Madonna to testify under a grant of immunity. Again summoned to testify on March 16, Madonna refused to answer questions.

Madonna was then brought before Judge Edelstein. He argued that the prosecution was using the grand jury as a "contempt trap" to punish him for his refusal to testify for the government at trial. He also claimed that the government was improperly using the grand jury to obtain evidence to present in opposition to his pending habeas petition, in which he claimed that the government had used perjured testimony and suppressed Brady material in convicting him.

Judge Edelstein thereupon held Madonna in civil contempt, ordering him jailed for the duration of the grand jury term until he responded to questioning. He ruled this incarceration would be in addition to the sentence he was then serving. Because Madonna persisted in his refusal to testify, his incarceration for contempt ran from March 16, 1982 until the grand jury was discharged on August 25, 1983, thus deferring the expiration of his sentence and his parole eligibility by 528 days, from November 8, 1986 to April 19, 1988.

We subsequently affirmed Judge Edelstein's order. *In re Grand Jury Proceeding Involving Matthew Madonna*, 697 F.2d 293 (2d Cir.1982). We dismissed Madon-

[*] Honorable John E. Sprizzo, United States District Judge for the Southern District of New York, sitting by designation.

na's claim that the grand jury was conducted as a "contempt trap" to lengthen his prison term, finding that he had not shown any reason why the government would go through the elaborate process of summoning a grand jury and securing an order of immunity merely to hold him in contempt and stay his 30-year sentence for 528 days.

Four years later, in March 1986, Madonna, presenting an allegedly new ground for relief from the order of contempt, filed a petition for a writ of habeas corpus in the District Court for the Middle District of Pennsylvania, where he had been reincarcerated after his temporary detention in New York when called before the grand jury. He contended that, in an unrelated habeas petition brought in November of 1983 by another defendant, information had been revealed indicating that Madonna had been summoned before the grand jury in 1982 so that a "coincidental" meeting could be arranged between him and an informant, Nicky Barnes, who had also been called before the grand jury.

Judge Caldwell denied this petition on October 31, 1986 because it was brought in the wrong forum and more than one year had elapsed since the finding of contempt; he noted that Madonna could collaterally attack the contempt order by bringing an independent action under Fed.R.Civ.P. 60(b)(2) in the Southern District of New York, where the contempt had been imposed.

On December 2, 1986, alleging the same claims as he had in his Pennsylvania habeas petition, Madonna filed an independent action in the Southern District pursuant to Rule 60(b)(2) seeking vacatur of his contempt citation. Madonna's evidence that the government had fraudulently misrepresented its reasons for procuring Madonna's grand jury testimony consisted of two documents from the files of the Drug Enforcement Agency (DEA) annexed to his complaint. The first summarizes an interview conducted in July 1981 in which Barnes, the government informant, told a DEA agent that he believed Madonna was "still involved in the trafficking of multi-kilogram amounts of heroin." He said he believed

that "more information could be obtained concerning ... Madonna's activities" if a meeting could be arranged between himself and Madonna. The second document is a summary of an interview conducted in October 1981, in which government agents told Barnes that a grand jury was being convened in the Southern District and that several convicted heroin traffickers would be subpoenaed to testify. Barnes was told he, too, would be called. No reference was made to Madonna.

Madonna also alleges that, when he was transferred from Pennsylvania to New York City to appear before the grand jury, he was placed in a cell next to Nicky Barnes. Madonna claims that Barnes then solicited his participation in a large sale of heroin, but he declined. Madonna further points out that AUSA Tendy, who had sought the contempt order, also supervised Barnes's cooperation with the government.

On February 18, 1988, the government moved under Fed.R.Civ.P. 12(c) for judgment on the pleadings, arguing that Madonna failed to allege any evidence to support his contention that the contempt order was obtained by fraud and, in the alternative, that his claim was barred by the doctrines of *res judicata* and laches.

Judge Carter granted the government's motion on November 7, 1988, finding that Madonna failed to state a claim upon which relief could be granted as required by Fed. R.Civ.P. 12(c). The court further held that his action was also defective for failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b). Judge Carter did not address the claims that the action was barred by *res judicata* and laches. Madonna now appeals the dismissal of his complaint.

*Failure To State A Claim Upon Which Relief Can Be Granted*

 An independent action under Fed. R.Civ.P. 60(b)(2) allows the court to relieve a party from a judgment if new evidence of fraud or mistake is discovered which was not available to the party in time to move for a new trial. *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 872–73 (5th Cir.1984). Normally, an action for

fraud on the court under Rule 60(b) must be established by clear and convincing evidence, *Booker v. Dugger*, 825 F.2d 281, 283–84 (11th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988). However, for the purpose of refuting a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), the nonmoving party need not meet this high burden of proof at the threshold; it is enough to allege facts which, when assumed to be true, would amount to fraud on the court.

In evaluating a Rule 12(c) motion, the court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 56 (2d Cir.1985). The court must also take "the well-pleaded material facts alleged in the complaint ... as admitted," *Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 286 (2d Cir.1974), and may not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Madonna therefore claims that the court was required to accept as true his allegations that the AUSA used the grand jury as a subterfuge to further an undercover investigation and as a "contempt trap." He contends that the court erred in dismissing his claim without affording him the opportunity for further discovery. We disagree.

Madonna makes two claims to support his allegations of fraud on the court: (1) he was summoned before the grand jury, not to obtain information, but to facilitate a meeting between Madonna and Barnes for the purpose of obtaining evidence to incriminate Madonna and (2) he was granted immunity in order to punish him, through the resulting contempt charge, for his refusal to testify on the government's behalf. In addition to the two DEA documents described above, Madonna buttresses his charge of fraud with the two allegations that Barnes solicited his involvement in a drug deal while they were both incarcerated in New York and that the same AUSA obtained a contempt sentence against Madonna and supervised Barnes's cooperation as a confidential informant. Even if we accept the facts Madonna alleges and draw the inferences that may reasonably be drawn from them in Madonna's favor, the complaint still does not show any fraud or misrepresentation by the government. Madonna's claims of fraud are his own "legal conclusions [and] characterizations," and these a court need not accept in considering a Rule 12(c) motion. *Tyco Laboratories, Inc. v. Cutler–Hammer, Inc.*, 490 F.Supp. 1, 4 (S.D.N.Y. 1980).

The DEA documents do not in any way support Madonna's allegation that the government summoned him to the grand jury for the sole purpose of placing him in proximity to Barnes so that Barnes could elicit incriminating evidence from him. At best, the documents show that the government believed Madonna might still be involved in drug dealing and that Barnes might be able to discover more about his activities, incidentally to their attendance before the upcoming grand jury. Although Madonna's grand jury summons enabled the government to place Barnes in a position to discover such information, the complaint alleges no facts suggesting that this was the AUSA's motive for calling him before the grand jury. The government was conducting a narcotics investigation in New York that focused on several major drug figures besides Madonna who were familiar with the drug traffic in the area; it was therefore to be expected that such witnesses would be lodged together in the New York detention prison.

The government had reason to believe that Madonna had knowledge of illegal activities that might be obtained through his grand jury testimony, through what Barnes could discover, or both. It is the duty of the government to investigate such matters and it is entirely proper to use confidential informants and grand juries to obtain evidence of continuing violations of narcotics statutes.

As for Madonna's allegation that the government was setting a "contempt trap," the facts do not suggest that such was the case. It would be contrary to the inferences that may reasonably be drawn from the facts alleged to suggest that the prosecution would take all the elaborate steps necessary to secure an order of immunity for Madonna just to defer his parole by any period of his detention for contempt at a time when he still faced another 25 years in prison. Madonna's allegations do not support any inference that the government's motive in granting him immunity was to punish him for declining Barnes's alleged offer to partake in a drug transaction or to protect Barnes's secret status as an informant.

■ The record before us and the inferences to be drawn therefrom fully support the conclusion of the district court that the prosecution acted properly. The government may seek a grant of immunity to obtain testimony and, to make such grants effective, it is customary to ask the court to hold recalcitrant witnesses in contempt.

■ In sum, we conclude that none of the motives Madonna attributes to the prosecution in support of his charge of fraud can reasonably be inferred from his allegations and that his complaint therefore fails to state a claim upon which relief can be granted.

*Failure to Plead Fraud With Particularity*

■ We also agree with the district court that Madonna's complaint was defective because it failed to plead fraud with the particularity required by Fed.R.Civ.P. 9(b): "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity...." Madonna claims that he pleaded fraud with sufficient particularity by alleging the specific date, place and time when Tendy misrepresented his intentions in summoning Madonna to the grand jury and that he adequately stated the facts upon which his belief was founded. We disagree.

Madonna's allegations are not accompanied by assertions of facts that support his claim of fraud. Under Rule 60(b), "conclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud...." *Di Vito v. Fidelity & Deposit Co. of Maryland,* 361 F.2d 936, 939 (7th Cir.1966). Although the rule that allegations may not be based on information and belief is relaxed if the matters are "peculiarly within the adverse [party's] knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded." *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). Madonna's charges of fraud do not follow from the two DEA documents he proffers or from his other allegations, but are "mere conclusory allegations" which do not satisfy his burden under Rule 9(b). *Shemtob v. Shearson, Hammill & Co., Inc.,* 448 F.2d 442, 444 (2d Cir.1971).

One of the purposes of Rule 9(b) is to discourage the filing of complaints "as a pretext for discovery of unknown wrongs." *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), *aff'd,* 636 F.2d 1201 (2d Cir.1980). Madonna's contention, that discovery will unearth information tending to prove his contention of fraud, is precisely what Rule 9(b) attempts to discourage. *See, e.g., Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 116 (2d Cir.1982) ("Rule 9(b) [fails] in its purpose if conclusory generalizations such as these will permit a plaintiff to set off on a long and expensive discovery process in the hope of uncovering some sort of wrongdoing ...").

Our conclusions render it unnecessary to consider the government's claims that Madonna's action is barred by the doctrine of *res judicata* and laches.

Affirmed.