## Gordon M. and Edith C. BROWNE

v.

## UNITED STATES of America.

### No. Civ. 1:97CV349.

United States District Court,
D. Vermont.

May 14, 1998.

James Torrisi, Derby Line, VT, J.E. McNeil, Jordan, McNeil & Ricks, P.C., Washington, DC, for Plaintiff.

Carol L. Shea, Ass't U.S. Attorney, Burlington, VT, George P. Eliopoulos, U.S. Dep't of Justice, Washington, DC, for Defendants.

## RULING ON MOTION FOR JUDGMENT ON THE PLEADINGS (paper 7)

MURTHA, Chief Judge.

### Background

In relevant part, Fed.R.Civ.P. 12(c) provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "In evaluating a Rule 12(c) motion, the court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir.1989). The Court also must accept all well-pleaded material factual allegations as admitted and may not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Applying this standard, the Court finds the following. Plaintiffs Gordon and Edith Browne are members of the Religious Society of Friends, more commonly referred to as the "Quakers." Based upon their deeply-held religious beliefs, many Quakers historically have refused to participate in any war-related activities.

In this case, the plaintiffs object to voluntarily supporting Department of Defense activities with their taxes. The plaintiffs filed federal income tax returns for 1993, 1994 and 1995. In these returns, they indicated the total amount of tax they owed; however, they only remitted approximately 72% of the sum due and owing. They did not pay the remaining 28%, which they computed as representing the portion of their taxes which the Government allocated to the Department of Defense.

The Brownes describe their complaint as follows:

The Brownes are not arguing either that the Government cannot collect taxes or that the Government should not levy for taxes owing. The Brownes complaint [sic] solely on the premise that while collecting those taxes the Government may not, in the name of neutral application of law, inflict the additional pain of penalties and interest where the Government already has it within its power to meet [sic] its own compelling interest to collect taxes with its already estab[li]shed system of levy.

Simply put: the Service abused its discretion in not applying its established exception to the assessment of penalties and interest to these individuals who acted based on their deeply held religious beliefs.

Opposition to Motion to Judgment on the Pleadings (paper 11) at 1–2.

Relying on the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* (hereinafter "RFRA"), the First Amendment's guarantee of freedom of religion, and a vari-

ety of provisions from the Internal Revenue Code, the plaintiffs seek an abatement of penalties and interest which the IRS imposed as a result of their partial payments for tax years 1993, 1994 and 1995. They also seek an order requiring the IRS to use levy procedures to collect the portion of their taxes which they withheld as earmarked for the Department of Defense. By requiring the IRS to levy these funds, the plaintiffs believe they avoid voluntary support of war-related activities.

### Discussion

■ The plaintiffs essentially seek to impose an obligation upon the Government to accommodate their objection to a particular use of their tax dollars. However, courts consistently have upheld the constitutionality of the federal tax laws when considering objections similar to those raised by the plaintiffs. *See, e.g., Tinsley v. Commission of IRS,* 958 F.Supp. 277, 280 (N.D.Tex.1997).

For example, in *United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982), an Amish employer sought an exemption from the collection and payment of Social Security taxes on the ground that the Amish faith prohibited his participation in governmental support programs. In rejecting the taxpayer's argument, the Court explained:

> [I]t would be difficult to accommodate the comprehensive social security system with myriad exceptions flowing from a wide variety of religious beliefs. The obligation to pay the social security tax initially is not fundamentally different from the obligation to pay income taxes; the difference—in theory at least—is that the social security tax revenues are segregated for use only in furtherance of the statutory program. There is no principled way, however, for purposes of this case, to distinguish between general taxes and those imposed under the Social Security Act. If, for example, a religious adherent believes war is a sin, and if a certain percentage of the federal budget can be identified as devoted to war-related activities, such individuals would have a similarly valid claim to be exempt from paying that percentage of the income tax. The tax system could not

function if denominations were allowed to challenge the tax system because tax payments were spent in a manner that violates their religious belief.... Because the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax.

*Id.* at 259–60, 102 S.Ct. 1051 (citations omitted).

■ Accordingly, the plaintiffs' religion-based disagreement with the uses to which certain of their tax funds are put does not relieve them of the obligation to comply with this nation's tax laws. *See Employment Div., Dept. of Human Resources of Oregon v. Smith,* 494 U.S. 872, 879, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). Moreover, it does not entitle them to reject voluntary compliance with the tax laws and to force the IRS to undertake the additional time and expense of using levy procedures to collect the amount the plaintiffs admit is due. *See id.* at 884, 110 S.Ct. 1595 ("To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is 'compelling'—permitting him, by virtue of his beliefs, 'to become a law unto himself,' ... contradicts both constitutional tradition and common sense.") (citation and footnote omitted).

The plaintiffs' reliance on *Bowen v. Roy,* 476 U.S. 693, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986) is misplaced. In *Bowen v. Roy,* the Supreme Court determined the Free Exercise Clause of the First Amendment does not compel the Government to accommodate an applicant's religiously-based objection to the statutory requirement that he or she provide a Social Security number to obtain certain welfare benefits. In so finding, the Court noted: "Appellees may not use the Free Exercise Clause to demand Government benefits, but only on their own terms, particularly where that insistence works a demonstrable disadvantage to the Government in the administration of the programs." 476 U.S. at 711–12, 106 S.Ct. 2147. Similarly, the instant plaintiffs' invocation of religious hardship does not entitle them to ignore their obli-

gation to voluntarily comply with the country's tax laws, nor does it require the Government to undertake a more onerous levy procedure to collect their taxes.

██ The plaintiffs also allege that RFRA, 42 U.S.C. §§ 2000bb, *et seq.*, entitles them to withhold a portion of their taxes without interest or penalty.

In *Employment Div. v. Smith*, 494 U.S. at 883–84, 110 S.Ct. 1595, the Court departed somewhat from its prior First Amendment jurisprudence and found that neutral, generally applicable laws may be applied to religious practices, even when not supported by a compelling governmental interest. To restore the "compelling interest" test in matters involving alleged substantial burdens on the free exercise of religion, Congress passed RFRA.

In relevant part, RFRA section 2000bb–1 provides:

(a) In general

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

(b) Exception

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

Thus, RFRA purports to reestablish a "compelling interest" test by prohibiting a government from imposing a substantial burden on the free exercise of religion, unless it demonstrates that the application of the burden is the least restrictive means of achieving a compelling governmental interest.

As an initial observation, the Court questions whether the application of RFRA urged by plaintiffs is constitutional. Recently, in *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Supreme Court held RFRA unconstitutional as applied to state law because, in passing that law, Congress had exceeded its powers under § 5 of the Fourteenth Amendment. Characterizing the statute as a Congressional attempt to substantively change constitutional protections as interpreted by the judiciary, the Supreme Court noted that RFRA's "[s]weeping coverage ensures its intrusion at every level of government, displacing laws and prohibiting official actions of almost every description and regardless of subject matter." *Id.* at 2170.

Furthermore, several courts have concluded RFRA is unconstitutional as applied to certain federal laws. *Compare Christians v. Crystal Evangelical Free Church*, 141 F.3d 854 (8th Cir.1998) (concluding that RFRA is constitutional as applied to federal law) *with In re Gates Community Chapel of Rochester, Inc.*, 212 B.R. 220, 225–26 (Bankr.W.D.N.Y. 1997) (construing *Flores* as mooting debtor's argument that payment of post-confirmation U.S. trustee fees violates RFRA) *and Flores v. City of Boerne*, 877 F.Supp. 355, 356 (W.D.Tex.1995), *aff'd*, 119 F.3d 341 (5th Cir. 1997) (RFRA unconstitutional in that it seeks to overturn the Supreme Court's interpretation of the Constitution). Through RFRA, Congress has attempted "to impose upon the judiciary, a standard of review for interpreting constitutional rights which it believes is a better standard than that crafted by the Court itself." Young, 141 F.3d 854, 1998 WL 166642 at *9 (Bogue, Sr. District Judge, dissenting). Such an attempt is barred by the Constitution itself, which establishes the judiciary as the governmental body which "interprets the Constitution in a case or controversy." *Flores*, 117 S.Ct. at 2166.

Nevertheless, even assuming the constitutionality of RFRA and accepting as true the plaintiffs' allegation that voluntary compliance substantially burdens their practice of religion, the plaintiffs' complaint fails as a matter of law. Here, voluntary compliance with federal income tax laws is the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C. § 2000bb(b).

"[T]he Supreme Court has established that uniform, mandatory participation in the Federal income tax system, irrespective of reli-

gious belief, is a compelling governmental interest." *Adams v. Commissioner IRS,* 110 T.C. No. 13 (March 3, 1998) (citations omitted). It is beyond peradventure that the Government's interests in areas such as national defense, public safety and the funding of public health and welfare plans are sufficiently compelling to require general compliance with income tax laws.

Undoubtedly, many Americans disagree with some discrete potential use of their tax monies. Allowing individuals like the plaintiffs to withhold a portion of their due taxes would encourage chaos in that every individual with an objection to a particular governmental expenditure would be able to unilaterally impose additional, time-consuming administrative burdens on the IRS. Furthermore, acceptance of the plaintiffs' arguments would encourage more governmental involvement in religious matters in that the IRS would be required to assess the genuineness of each tax protester's religious beliefs. *See Lee,* 455 U.S. at 252 n. 2, 102 S.Ct. 1051. Finally, it is difficult to imagine a means of compliance with the tax laws which is less restrictive than the voluntary compliance to which the plaintiffs object.

Accordingly, the plaintiffs' complaint is insufficient as a matter of law. Having found the plaintiffs had no lawful basis for their non-compliance, the Court necessarily finds they are not entitled to the refund of interest and penalties otherwise properly assessed.

The Motion for Judgment on the Pleadings (paper 7) is GRANTED. The Clerk is directed to enter judgment in favor of the Government.

SO ORDERED.