**Toby PILMAN, Plaintiff,**

v.

**NEW YORK CITY HOUSING AUTHORITY, Defendant.**

**No. 96 Civ.3893(RMB)(RLE).**

United States District Court,
S.D. New York.

Feb. 25, 2002.

Toby Pilman, New York City, pro se.

Mark F. Walter, of counsel, New York City Housing Authority, New York City, for defendant.

### *ORDER*

BERMAN, District Judge.

## I. Background

*Pro se* Plaintiff Toby Pilman ("Plaintiff" or "Pilman") commenced two civil rights actions against her former employer, the New York City Housing Authority ("Defendant" or the "Authority"). The first suit, filed August 11, 1994, alleged discrimination based on race and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and 42 U.S.C § 1981. The second suit, filed May 23, 1996, alleged discrimination based on disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"), and retaliation in violation of Title VII. By Order dated September 26, 2000, the Court granted Defendant's motion for summary judgment on the racial discrimination and two retaliation claims and denied Defendant's motion for · summary judgment on the disability discrimination claim.

On March 29, 2001, the Authority filed the present motion to dismiss pursuant to Federal Rules of Civil Procedure ("Fed. R.Civ.P.") 12(b)(6), 37(b)(2)(C), and 41(b).[1] United States Magistrate Judge Ronald L.

---

**1.** The Authority had asserted the affirmative defense of statute of limitations in its Answer dated July 10, 1996 ("Answer") at ¶ 30, thus preserving its right to raise the issue at a later time. *See Santos v. Dist. Council of New York City,* 619 F.2d 963, 967 (2d Cir.1980) ("The statute of limitations defense need not be raised in a pre-answer motion. Rather, under Fed.R.Civ.P. 8(c), the statute of limitations constitutes an affirmative defense, to be asserted in a responsive pleading. The defense is sufficiently raised for purposes of Rule 8 by its bare assertion."). *See also Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001) ("'[A] motion to dismiss for failure to state a claim (or one of the other non-waivable defenses under Rule 12(h)) that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c). The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.'") (citations omitted).

Ellis, to whom the matter was referred, issued a Report and Recommendation, dated July 23, 2001 ("Report"), in which he recommends that Defendant's motion to dismiss be granted. *See* Report at 2 ("I respectfully recommend that NYCHA's motion to dismiss be **GRANTED** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.") (emphasis in original). On September 10, 2001, Plaintiff filed a "Motion to Oppose Report and Recommendation for Summary Judgment/96 Civ. 3893 from Hon. Ronald L. Ellis, U.S.M.J.," which the Court is treating as objections pursuant to Fed.R.Civ.P. 72(a) ("Objections").

**For the reasons set forth below, Defendant's motion is granted.**

## II. Standard of Review

A district judge reviewing a magistrate judge's report may adopt those portions of the report to which no "specific written objection" is made, so long as those sections are neither clearly erroneous nor contrary to law. Fed.R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y.1997), *aff'd*, 136 F.3d 313 (2d Cir.), *cert. denied*, 525 U.S. 983, 119 S.Ct. 448, 142 L.Ed.2d 402 (1998). The Court must conduct a *de novo* review of those findings to which a party has made a timely written objection, but is not required to conduct a *de novo* hearing. *See, e.g., East River Savings Bank v. Sec'y of Hous. and Urban Dev.*, 702 F.Supp. 448, 453 (S.D.N.Y.1988). Thereafter, the court may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See DeLuca v. Lord*, 858 F.Supp. 1330, 1345 (S.D.N.Y.

1994), *aff'd.* 77 F.3d 578 (2d Cir.), *cert. denied*, 519 U.S. 824, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996).

In addition, the Court must liberally construe the claims of a pro se litigant. *See, e.g., Soto v. Walker*, 44 F.3d 169, 173 (2d Cir.1995) (a court should "read [plaintiff's] supporting papers liberally, and will interpret them to raise the strongest arguments they suggest"); *Dais v. Lane Bryant, Inc.*, 203 F.R.D. 115, 117 (S.D.N.Y.2001) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) and *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

## III. Analysis

The Court has reviewed the Objections and the documents attached thereto, along with the record herein and applicable legal authorities, and has conducted a *de novo* review. Magistrate Judge Ellis correctly concluded that Plaintiff's disability discrimination claim is untimely. *See* Report at 7 ("Pilman's ADA claim is time-barred.").[2]

### A. Timeliness

The ADA incorporates by reference the limitations period set forth in Title VII (42 U.S.C. § 2000e–5(e)(1)) for employment discrimination actions. *See* 42 U.S.C. § 12117. In New York, the limitations period for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") is 300 days. *See* 42 U.S.C. § 2000e–5(e)(1). Allegedly discriminatory incidents not timely presented to the EEOC will be time-barred in a plaintiff's subsequent federal action. *See Quinn v. Green Tree Credit*

**2.** As Plaintiff's claim is resolved on the issue of untimeliness, the Court need not determine whether dismissal is warranted on other grounds, including Plaintiff's failure to engage in discovery.

*Corp.*, 159 F.3d 759, 765 (2d Cir.1998) ("Because [*pro se* plaintiff] filed her sex-discrimination charge ... on December 27, 1991 her Title VII cause of action would normally include any incidents alleged to have occurred in the preceding 300 day period; thus, any incidents alleged to have occurred prior to March 2, 1991, would be time-barred under Title VII."); *Miller v. Int'l Tel. and Tel. Corp.*, 755 F.2d 20, 24 (2d Cir.1985) ("[*Pro se* plaintiff's] 300 days to file with EEOC therefore expired more than half a year before he actually filed his ... EEOC complaint, and as a result, he forfeited his right to sue under the [Age Discrimination in Employment Act].").

Plaintiff's charge of disability discrimination was filed with the EEOC on October 10, 1995 (the "Charge"). Plaintiff is, therefore, barred from asserting any claims of discriminatory conduct which occurred before December 14, 1994, *i.e.*, 300 days before she filed the Charge. Because the Authority notified Plaintiff by letter, dated September 2, 1994, that her employment had been terminated, Plaintiff's claim, which is based on allegations of discriminatory discharge occurring more than 90 days before December 14, 1994, is untimely.

Nor is Plaintiff's claim saved under the "continuing violation" doctrine. *See Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir.1999) ("There is indeed a 'continuing violation' exception to the normal knew-or-should-have-known accrual date of a discrimination claim when there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests.") (citations omitted). Judge Ellis correctly found that Plaintiff's reference to February 22, 1995 (the date of a psychiatric report determining that Plaintiff was unfit to resume her duties) did not establish a continuing violation extending the limita-

tions period. *See* Report at 6–7 ("Failure to be reinstated in one's previous position of employment, however, does not constitute a continuing violation."); *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir.2000) ("In discriminatory discharge cases, then, the illegal act is often the decision to terminate the employee, and the limitations period begins to run on the date that the employer gives definite notice of that decision to the employee."); *Cavallaro v. Corning, Inc.*, 93 F.Supp.2d 334, 339 (W.D.N.Y.2000) ("An employer's failure to reinstate a plaintiff who alleges discriminatory treatment does not give rise to a continuing violation. Were that the case, an employee who stopped working because of an employer's allegedly discriminatory conduct and whose claim would otherwise be time-barred could easily circumvent the ADA's 300–day filing requirement simply by attempting to return to work.").

### B. Failure to Comply with Court Orders

Defendant has also sought dismissal of Plaintiff's disability discrimination claim pursuant to Fed.R.Civ.P. 37(b)(2)(C) and 41(b), for Plaintiff's failure to comply with discovery orders and failure to prosecute her case. As detailed in Defendant's moving papers and in the Report, Plaintiff has demonstrated an unfortunate unwillingness and/or inability to comply with discovery requests, even when directed to do so. *See* Report at 8 ("[T]he Court held a conference with the parties on December 5, 2000 ... NYCHA requested that Pilman sign a release for her Housing Authority Employee Assistance Program ('EAP') files. Def.Mem. at 7. The Court found that these files were relevant to Pilman's ADA claim. Pilman indicated that she did not believe that NYCHA was entitled to any further discovery and did not intend to

comply. The Court cautioned Pilman that failure to sign a release would result in this Court recommending to Judge Berman that the case be dismissed."). Plaintiff initially ignored Judge Ellis's discovery directive. *Id.* ("Pilman refused to comply with the Court's oral directive and as a result, on December 12, 2000, this Court issued a written order instructing Pilman to provide a signed release. On December 29, 2000, Pilman finally signed a consent form authorizing NYCHA to review her EAP files.") And, Plaintiff has (still) not appeared for her deposition, noticed for January 31, 2001.[3] *See* Order dated Jan. 10, 2001(RLE) (directing Plaintiff to appear for deposition).

## IV. Conclusion

The Court adopts the Report in all material respects and incorporates it herein by reference. For the reasons stated herein and therein, Defendant's motion to dismiss is granted.

The Clerk of the Court is respectfully directed to close this case.

**3.** The following chronology is taken from pages 8–9 of the Report:

> On the morning of January 30, 2001, Pilman left NYCHA's lawyer a voicemail message stating that she was ill and, as a result, was unable to attend her deposition the next day. NYCHA's counsel agreed to adjourn the deposition. Subsequently, her deposition was rescheduled for February 8, 2001. That deposition was canceled when on the morning of February 8, 2001, Pilman's physician faxed the Court a note explaining that Pilman would again be unable to attend because she was suffering from bronchitis, which he expected to last 7–10 days. Meanwhile, on January 25, 2001, Pilman moved to have the Court reconsider its order allowing her deposition; she did not want to go to NYCHA's office. This Court denied Pilman's request, and she appealed the decision to Judge Berman, who affirmed.

## REPORT AND RECOMMENDATION

ELLIS, United States Magistrate Judge.

## I. INTRODUCTION

*Pro se* plaintiff Toby Pilman ("Pilman") brought these two actions against her former employer, defendant New York City Housing Authority ("NYCHA"), alleging various civil rights violations. Pilman filed the first complaint on August 11, 1994, claiming discrimination based on race as well as retaliation in violation of Title VII of the Civil Rights Act Of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981. Pilman filed a second complaint on May 23, 1996, claiming discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA") and retaliation in violation of Title VII.

On September 26, 2000, District Judge Richard M. Berman granted NYCHA's motion for summary judgment with respect to Pilman's racial discrimination claim and her two retaliation claims, but denied the motion with respect to Pilman's

> The Court held a conference with the parties on February 27, 2001, and issued an order directing Pilman to make herself available for a deposition on March 14, 2001, or in the alternative have her physician, Dr. Raifman contact NYCHA's counsel by March 12, 2001, regarding her physical competency to be deposed. On March 12, 2001, counsel for NYCHA informed the Court that Pilman had left two voicemail messages explaining that she was suffering from laryngitis and would be unable to attend the deposition. In addition, counsel for NYCHA stated that he had spoken with Dr. Raifman on the telephone and Raifman explained that Pilman suffered from multiple myeloma. Walter Aff., ¶ 28. Pilman did not appear at the deposition on March 14, 2001, nor was a written medical justification given for her absence. *Id.* ¶ 29. NYCHA filed the instant motion on March 29, 2001.

disability claim. This matter was referred to the undersigned for general pretrial matters on November 28, 2000, and for dispositive motions on April 24, 2001. NY-CHA now seeks dismissal of plaintiff's disability claim pursuant to Fed.R.Civ.P. 12(b)(6), 37(b)(2)(C), and 41(b). For the reasons which follow, I respectfully recommend that NYCHA's motion to dismiss be **GRANTED** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. BACKGROUND[1]

Pilman was employed by NYCHA on March 27, 1987, and became a housing assistant at the Jackie Robinson Houses on March 21, 1988. Order at 2. As a housing assistant, Pilman was responsible for gathering and verifying information regarding prospective tenants, collecting rent from current tenants as well as acting as a liaison between the current tenants and NYCHA by handling their complaints. *Id.* During her tenure with NYCHA, Pilman was criticized for her work performance on more than one occasion by her supervisors. *Id.* She received critiques for failing to visit tenants owing rent and for leaving the office without permission. *Id.* In addition, she was cited nine times by supervisors for rude and insubordinate behavior in relation to colleagues and tenants. *Id.* On October 27, 1988, pursuant to New York Civil Service Law § 72, NYCHA referred Pilman to psychiatrist Ruth Cohen, who determined that Pilman could perform the duties of housing assistant. *Id.* In 1989, after creating a disturbance in the office, Pilman was suspended for two days. *Id.*

On January 6, 1993, while arguing with her supervisor, Pilman forcefully banged on the top of a glass table and cut her hand. *Id.* at 3. As a result, NYCHA called the police and Pilman was taken to Harlem Hospital and later transferred to Payne Whitney Hospital, where she remained until January 22, 1993. *Id.* On February 16, 1993, NYCHA referred Pilman to psychiatrist Azariah Eshkenazi who concluded in a report dated March 30, 1993, that Pilman was not fit to fulfill her work-related duties because she was suffering from a "personality disorder, paranoid type." *Id.* Pilman received a hearing before the New York City Office of Administrative Trials and Hearings. *Id.* After considering all the evidence presented, including testimony offered by Pilman from a psychiatrist stating that she was competent, an administrative law judge issued a report and recommendation on August 12, 1993, finding Pilman unfit to perform her duties. *Id.* On August 25, 1993, NYCHA placed Pilman on a one year leave of absence. *Id.* On May 16, 1994, Pilman petitioned for another psychiatric examination and for reinstatement. *Id.* On February 9, 1995, Eshkenazi examined Pilman again and reaffirmed his conclusions that she was unfit to execute her duties. *Id.* In the interim, NYCHA terminated Pilman's employment on September 1, 1994. Def.Mem. at 5.[2] NYCHA sent her a letter on September 2, 1994, informing her that the termination was based on her being absent from work for one year because of a disability. *Id.*

On October 10, 1995, Pilman filed a second complaint with the Equal Employment Opportunity Commission ("EEOC") alleg-

---

**1.** The following facts are taken from Judge Berman's order dated September 26, 2000, ("Order") where he adopted the facts recited in a Report and Recommendation issued by Magistrate Judge Sharon E. Grubin on February 25, 2000.

**2.** "Def.Mem." refers to NYCHA's memorandum of law in support of its motion to dismiss.

ing discrimination in violation of the ADA, and in retaliation for her 1988 complaint filed with NYCHA's Office of Equal Opportunity. Order at 4. On March 1, 1996, the EEOC issued Pilman a right-to-sue letter, and she filed a second complaint on May 23, 1996. *Id.* On September 26, 2000, Judge Berman issued an order granting NYCHA's summary judgment motion regarding all of Pilman's claims except her disability discrimination claim. Order at 1, 16. On November 28, 2000, Judge Berman referred this case to the undersigned for general pretrial supervision. On January 10, 2001, this Court issued an order granting NYCHA's request to depose Pilman pursuant to Fed.R.Civ.P. 30(a)(20(B)). Pilman's deposition was scheduled for January 31, 2001, at 11:00 a.m. On January 30, 2001, Pilman left a phone message for defendant's lawyer stating she was ill and unable to attend the scheduled deposition the next day. The deposition was rescheduled for February 8, 2001, at 11:00 a.m. On February 7, 2001, Pilman's doctor, Leonard Raifman ("Dr.Raifman") faxed NYCHA a letter stating that Pilman would not be able to attend the deposition for medical reasons, but did not indicate the nature of the ailment. On February 8, 2001, Dr. Raifman faxed the Court a more informative note stating Pilman's diagnosis as bronchitis which he expected to last 7–10 days. On February 27, 2001, following a conference with the parties, this Court issued an order directing Pilman to appear for a deposition on March 14, 2001, at 11:00 a.m. Pilman failed to appear for the deposition. On March 29, 2001, NYCHA filed the instant motion to dismiss Pilman's ADA claim. On April 24, 2001, this Court denied Pilman's motion for reconsideration of this Court's order of January 10, 2001, mandating her deposition. Pilman appealed this Court's ruling to Judge Berman who upheld the decision in an order dated May 22, 2001.

## III. DISCUSSION

NYCHA moves for dismissal based on the untimeliness of Pilman's ADA action and her unwillingness to cooperate during the discovery process by submitting to a deposition.

### A. Standard of Review for Dismissal Under 12(b)(6)

A motion to dismiss under Rule 12(b)(6) should be granted only if it appears beyond doubt that " 'no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). In a motion for judgment on the pleadings, the well-pleaded allegations of fact by the nonmoving party must be accepted as true and construed in the light most favorable to that party. *See, e.g., Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994) (*citing Madonna v. United States,* 878 F.2d 62, 65 (2d Cir.1989)); *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Lab.,* 850 F.2d 904, 909 n. 2 (2d Cir.1988) (treating motion for judgment on the pleadings as if it were a motion to dismiss).

A court should draw all reasonable inferences in favor of the plaintiff, and should not dismiss the complaint unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816, 115 S.Ct.

73, 130 L.Ed.2d 28 (1994). However, a court does not have to accept as true "conclusions of law or unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir. 1994), *cert. denied,* 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995) (*quoting* 2A Moore & Lucas, Moore's Federal Practice ¶ 12.08, at 2266–69 (2d ed.1984)).

## B. Timeliness

When seeking redress for discriminatory conduct that violates the ADA, a plaintiff must first file a timely EEOC charge before bringing a claim in court. *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999). In New York, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days after the alleged discrimination. *Id.*; *Butts v. City of New York,* 990 F.2d 1397, 1401 (2d Cir. 1993). "It has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." *Flaherty v. Metromail Corp.,* 235 F.3d 133, 137 (2d Cir.2000); *Miller v. Int'l Tel & Tel. Corp.,* 755 F.2d 20, 23 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985) (the statute of limitations "starts running on the date when the employee receives a definite notice of the termination, not upon his discharge.")

In this case, the alleged discrimination occurred on September 1, 1994, when Pilman was discharged from her employment with NYCHA. Pilman claims that the discriminatory action took place on February 22, 1995, the date of Eshkenazi's report finding her unfit to be reinstated.[3] Pl. Mem. at 3. She contends that she was the victim of a continuing violation. *Id.* The Second Circuit has held that "a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir. 1994). "Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Id.* A continuing violation will toll the statute of limitations "provided such a continuing violation is 'clearly'" claimed in the EEOC charge and the complaint. *Miller,* 755 F.2d at 25.

Failure to be reinstated in one's previous position of employment, however, does not constitute a continuing violation. *Cavallaro v. Corning Inc.,* 93 F.Supp.2d 334, 339 (W.D.N.Y.2000). "Were that the case, an employee who stopped working because of an employer's allegedly discriminatory conduct and whose claim would otherwise be time-barred could easily circumvent the ADA's 300–day filing requirement simply by attempting to return to work." *Id.* Pilman was notified of her discharge by mail sent on September 2, 1994. Pilman filed an administrative charge with the EEOC alleging discrimination in violation of the ADA on October 10, 1995, well over 300 days after the discriminatory event took place. Accordingly, Pilman's ADA claim is time-barred. NYCHA appropriately raised untimeliness as an affirmative defense in its answer to Pilman's com-

---

**3.** Pilman also argues that Judge Berman's denial of NYCHA's motion for summary judgment with respect to her ADA claim is evidence that her claim is timely. Pl.Mem. at 2.

Pilman's rationale is flawed because Judge Berman's opinion did not address any procedural arguments. Specifically, the issue of timeliness was not considered.

plaint. Ans. ¶ 30.[4]

## C. Obstruction of the Discovery Process

NYCHA also seeks dismissal based on Pilman's frustration of the discovery process. Def.Mem. at 6. Rule 37(b)(2) states, in relevant part:

> If a party ... fails to obey an order to provide or permit discovery, ..., the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> [...]
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; [...]

In *Baba v. Japan Travel Bureau Int'l*, 111 F.3d 2, 4–5 (2d Cir.1997) the Court of Appeals affirmed the dismissal of a *pro se* plaintiff's complaint alleging employment discrimination because of the plaintiff's repeated failures to comply with discovery orders for over a year despite the district court's warnings that such deliberate disregard would be sanctionable. The Court made clear that it would uphold dismissals as a sanction for " 'willfullness, bad faith, or any fault' on the part of the sanctioned party." *Id.* at 5 (*citing Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 734 (2d Cir.1987) (citations omitted)).

In this case, the Court held a conference with the parties on December 5, 2000, shortly after the November 28, 2000, referral. NYCHA requested that Pilman sign a release for her Housing Authority Employee Assistance Program ("EAP") files. Def.Mem. at 7. The Court found that these files were relevant to Pilman's ADA claims. Pilman indicated that she did not believe that NYCHA was entitled to any further discovery and did not intend to comply. The Court cautioned Pilman that failure to sign a release would result in this Court recommending to Judge Berman that the case be dismissed. Pilman refused to comply with this Court's oral directive and as a result, on December 12, 2000, this Court issued a written order instructing Pilman to provide a signed release. On December 29, 2000, Pilman finally signed a consent form authorizing NYCHA to review her EAP files. Upon receiving the consent form, NYCHA quickly moved to obtain the pertinent file and noticed Pilman's deposition for January 31, 2001.

On the morning of January 30, 2001, Pilman left NYCHA's lawyer a voicemail message stating that she was ill and, as a result, was unable to attend her deposition the next day. NYCHA's counsel agreed to adjourn the deposition. Subsequently, her deposition was rescheduled for February 8, 2001. That deposition was canceled when on the morning of February 8, 2001, Pilman's physician faxed the Court a note explaining that Pilman would again be unable to attend because she was suffering from bronchitis, which he expected to last 7–10 days. Meanwhile, on January 25, 2001, Pilman moved to have the Court reconsider its order allowing her deposition; she did not want to go to NYCHA's office. This Court denied Pilman's request, and she appealed the decision to Judge Berman, who affirmed.

The Court held a conference with the parties on February 27, 2001, and issued an order directing Pilman to make herself available for a deposition on March 14, 2001, or in the alternative have her physi-

---

4. "Ans." refers to NYCHA's answer to Pil-  man's second complaint, 96 Civ. 3893.

cian, Dr. Raifman contact NYCHA's counsel by March 12, 2001, regarding her physical competency to be deposed. On March 12, 2001, counsel for NYCHA informed the Court that Pilman had left two voicemail messages explaining that she was suffering from laryngitis and would be unable to attend the deposition. In addition, counsel for NYCHA stated that he had spoken with Dr. Raifman on the telephone and Raifman explained that Pilman suffered from multiple myeloma. Walter Afl. ¶ 28.[5] Pilman did not appear at the deposition on March 14, 2001, nor was a written medical justification given for her absence. *Id.* ¶ 29. NYCHA filed the instant motion on March 29, 2001.

The Court of Appeals has "upheld '[t]he severe sanction of dismissal with prejudice ... even against a plaintiff who is proceeding *pro se,* so long as a warning has been given that noncompliance can result in dismissal.'" *Baba,* 111 F.3d at 5 (*citing Valentine v. Museum of Modern Art,* 29 F.3d 47, 50 (2d Cir.1994)). Here, the Court warned Pilman that nonappearance at her deposition would result in dismissal.[6] At conferences held on January 25, 2001, and February 27, 2001, the Court repeatedly explained to Pilman NYCHA's right to depose her as well as the fact that noncompliance would lead to dismissal of her ADA claim. To that end, the Court issued a written order on February 27, 2001, instructing Pilman to appear at her deposition on March 14, 2001.

Rule 41(b) states: "Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defen-

dant may move for dismissal of an action or of any claim against the defendant."

The district court has the discretion to dismiss cases for a lack of prosecution pursuant to Fed.R.Civ.P. 41(b). *Lukensow v. Harley Cars of New York,* 124 F.R.D. 64, 66 (S.D.N.Y.1989) (*citing Harding v. Fed. Reserve Bank of New York,* 707 F.2d 46 (2d Cir.1983)). "A District Court may, *sua sponte,* dismiss an action for lack of prosecution." Id. (citing Link v. Wabash R.R. Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). The Second Circuit, however, has added a caveat to this discretionary power, cautioning that dismissal under Rule 41(b) "is a harsh remedy and is appropriate only in extreme situations." *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996) (*citing Alvarez v. Simmons Mkt. Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir.1988)). Dismissal should be determined in "light of the record as a whole." Id. The Second Circuit has further advised district courts to "be especially hesitant to dismiss for procedural deficiencies where ... the failure is by a pro se litigant." Id. (citing Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir.1993)). In addition, the Second Circuit has established factors to be considered in determining whether a *pro se* litigant's case should be dismissed for lack of prosecution under Rule 41(b) as follows: "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately consid-

---

5. "Walter Afl." refers to the affidavit of Mark F. Walter, counsel for NYCHA, in support of NYCHA's motion to dismiss.

6. In fact, in her opposition to NYCHA's motion to dismiss, Pilman acknowledges that the undersigned warned her of the possibility of this Court sanctioning her noncompliance. Pl.Opp. at 4.

ered a sanction less drastic than dismissal." Id. (citing Jackson v. City of New York, 22 F.3d 71, 74–76 (2d Cir.1994); *Alvarez*, 839 F.2d at 932).

In the instant case, it has been almost six months since NYCHA first noticed Pilman's deposition. She was advised in various conferences with the Court as well as in telephone conversations with the Court that her failure to be deposed would result in dismissal of her complaint. Pilman has proffered a medical justification for one of her absences. The Court accepts that Pilman has been uncooperative during the discovery process. The Court recognizes that she repeatedly objected to the location of the deposition—NYCHA's offices.[7] Pilman's non-appearances at her depositions, however, appear to be the result of medical reasons. While the timing of these afflictions raises questions, the Court is unable to find conclusively that there has been willful noncompliance. On the other hand, plaintiff has made it clear that she does not intend to attend a deposition at NYCHA's office. Because the Court finds that plaintiff's claims are time-barred, this issue need not be conclusively resolved.

## IV. CONCLUSION

For the foregoing reasons, the undersigned recommends that NYCHA's motion to dismiss be **GRANTED** under Rule 12(b)(6), and that Pilman's claim under the ADA be **DISMISSED.**

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed

with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard M. Berman, 40 Centre Street, Room 201, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.1989) (*per curiam*); 28 U.S.C. §§ 636(b)(1) (West Supp.1995); Fed.R.Civ.P. 72, 6(a), 6(e).

---

7. Pilman raised both of these objections to the Court in her motion for reconsideration of her deposition. The Court evaluated her claims and subsequently denied her motion in an order dated April 24, 2001. Judge Berman affirmed the undersigned's decision in an order dated May 22, 2001. Pilman again raises these objections in her opposition to defendant's motion. Pl.Opp. at 5–7.